UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

HARRY PELESS,

Defendant.
_______________________________/

CR. NO. 25-20656

HON. MARK A. GOLDSMITH

# HARRY PELESS'S SENTENCING MEMORANDUM

Harry Peless is a devoted father, husband, and son. He also lived his life as a public servant, serving in the Army National Guard for 7 years, and then as a U.S. Border Patrol Agent for 23 years. He had no criminal history before this case. This crime was very serious, but aberrant behavior, and the consequences for Mr. Peless's life have been steep even apart from whatever term of imprisonment this Court will impose. His career is over. He seriously damaged his relationship with his family, though he has been working hard to recover it as discussed in a letter from his wife. And he faces a second conviction and potential imprisonment term in state court in New Jersey, federal supervision, and registration as a sex offender.

The parties agree that this Court should impose the mandatory minimum prison term of 60 months. The sentence is higher than the guidelines range of 46 to 57

months. And no longer term is necessary to reflect the goals of sentencing: Mr. Peless is deeply remorseful and has worked to understand the causes of his actions so that they will not occur again.

## I.
## Mr. Peless's History and Characteristics

Harry Peless has, in large part, led an exemplary life. Born to loving parents, he graduated high school, completed a mission with his church, honorably served in the Army for 7 years, graduated college, joined U.S. border patrol, and succeeded in his career for over 22 years. At the same time, he met his wife and with her raised two successful children. His wife describes him as "a man of service." (Ex. 1, Support Letters, at 1.) "He has always strived to help others and to serve his family, friends, community, and church." (*Id.*) His wife describes the way he served his kids, their parents, and the community. (*Id.*) "He worked the midnight shift for over a decade because it provided the most income for us and was the best schedule to allow him to be involved in all our kids' activities." (*Id.*)

Mr. Peless's brother attests: "As a father, he provides for his family and sees that their present and future needs are met. He does his best to help them be better than himself in society. His son is currently pursuing graduate education in the health field and his daughter is in her bachelor's studies." (*Id.* at 8.) His mother has explained that he was an active father, helping with "little league, family vacations,

soccer, band, concerts, camping trips, college applications through college graduations and his son's wedding." His uncle attests how Mr. Peless puts family first: "As an example when his (maternal) Aunt Opal was turning 80 in 2017 my wife planned a family get together and he and his family were one of the few nephews/nieces who traveled (about 2 hours one way in late November) to celebrate with her." (*Id.* at 5.)

Others in his life praise how, as a border patrol agent, "he showed simple kindness and humanity shared with those who were arrested and detained for illegally crossing the border." (*Id.* at 7.) "Because his level of Spanish competence was well beyond the typical non-native Spanish speaker due to two years of intense use during a church mission to Paraguay, he could speak with detainees, many of whom had worries and concerns, to help them in their own time of trouble." (*Id.*)

But despite his success in life, Mr. Peless now realizes he was dealing with undiagnosed depression—depression that his father identifies as running in his family but which the family had not really openly dealt with until this case. (Ex. 1, Support Letters, at 4.) He lost motivation for his hobbies and interests and endured daily suicidal ideations. PSR ¶ 55. Now in jail he is prescribed medication that helps. He is eager to participate in mental-health treatment in the future. His wife describes how

he has told her "he plans to use proper resources and support to help him with his mental health and other issues" going forward. (Ex. 1, Support Letters, at 2–3.)

## II.
## Nature of the Offense

Mr. Peless takes full responsibility for his criminal acts. Importantly, there is no allegation of Mr. Peless ever committing any hands-on offense. His own children report no wrongdoing against them, nor do any other the other children in his life. His wife discusses how he "has shown great remorse for what he has done and is aware of the pain and sadness that he has caused." (Ex. 1, Support Letters, at 2.) He has expressed "that he is prepared to work hard to better himself," and that "he wants to work hard to try to rebuild trust and relationships with [his wife] and [their] kids." (*Id.*) His mother and father talk to him almost daily, and have shared with counsel how much he has reflected on what happened, has expressed serious remorse, and is committed to change.

## III.
## Punishment, Deterrence, and Protection of the Public

A sentence of five years and strict supervision will sufficiently achieve the goals of deterrence and punishment. The certainty of being caught is far more important than the severity of the punishment imposed in deterring crime. *Five Things About Deterrence*, U.S. Department of Justice, National Institute of Justice

(2016), https://perma.cc/BD2Q-M8PU. Particularly for people like Mr. Peless, who have never sustained a criminal conviction, standing before the court facing loss of his freedom is an extraordinarily impactful experience. Imposing more than a five-year sentence will not significantly increase the deterrent effect of this sentence on Mr. Peless or others in the community.

Further, the felony conviction itself, along with supervision, carries serious consequences. Mr. Peless will be required to register as a sex offender, which carries with it strict regulation and public humiliation. This registration may last for the rest of his life given his age. He will not be able to legally purchase or possess firearms, a regular part of his career before this arrest. As part of supervision, he will have his behavior monitored, his movement restricted, and be subject to conditions and limitations imposed by the Court. These consequences are sufficient, but not greater than necessary, to fulfill the purposes of sentencing.

There is strong evidence that society supports sentences lower than the guidelines advise. In *United States v. Collins*, 828 F.3d 386, 391 (6th Cir. 2016), the Sixth Circuit upheld a downward variance from 262 to 327 months to the 5-year minimum in a vastly more serious child-pornography distribution case after a jury trial. Interestingly, the sentencing judge in *Collins* polled the jury about the

appropriate sentence, and *every* juror answered somewhere between probation and 60 months, with an average of 14.5 months and a median of just 8 months.

Significant scholarship also shows that the guidelines recommended overly long sentences in these types of cases. Although the Commission usually develops guidelines using sentencing data, in the case of § 2G2.2, "the Commission did not use this empirical approach." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). Instead, amendments to this guideline, ostensibly to target mass CP producers or repeat child abusers, have resulted in "cobbled together" enhancements—including two that apply here, use of a computer and possession of images of prepubescent children—that apply in nearly every case. *Id.* at 186. In the end, these guidelines are draconian, stale, misguided, and ignorant of social science data.

In response to complaints from judges who regularly impose below-guidelines sentences, the Sentencing Commission itself criticized these guidelines, concluding the ranges are unfairly inflated by cumulative enhancements *and* inflated base offense levels. *See* U.S.S.C., Report to Congress: Federal Child Pornography Offenses (2012), https://perma.cc/P588-VUKD. After the study, even DOJ agreed that "§ 2G2.2 may not accurately reflect the seriousness of an offender's conduct, nor fairly account for differing degrees of offender dangerousness." *United States v. Pelloski*, 31 F. Supp. 3d 952, 959 (S.D. Ohio 2014) (quoting DOJ letter). So the

Commission, DOJ, and defense counsel appear to agree that these guidelines are not particularly useful in determining a fair sentence for this offense. Simply put, "[r]ationales for child pornography Guidelines for non-production offenses have been shredded." *United States v. D.M.*, 942 F.Supp.2d 327, 351 (E.D. N.Y. 2013).

Here, even with the enhancements that have been criticized as unfairly inflating sentences, the guidelines recommend a sentence *below* the mandatory minimum. These critiques of the guidelines further underscore why this Court should not impose any sentence above the mandatory minimum.

## IV.
## The Need to Avoid Unwarranted Sentence Disparities

A sentence of five years will not create any unwarranted sentencing disparities. Numerous possession defendants have been sentenced to probation or time-served for similar offenses when, as in this case, they had minimal criminal history, mental health issues that contributed to the offense, and low risk of recidivism. *See, e.g., United States v. Stall*, 581 F.3d 276 (6th Cir. 2009); *United States v. Prisel*, 316 F. App'x 377 (6th Cir. 2008); *United States v. Zofchak*, 14-CR-20538 (E.D. Mich. 2015); *United States v. Robinson*, No. 09-CR-20091 (E.D. Mich. 2013); *United States v. Banta,* 12-CR-20156 (E.D. Mich. 2012); *United States v. Dubin*, 12-CR-20828 (E.D. Mich. 2012).

Indeed, the average sentence for a person with the same offense level and criminal history category is just 48 months, a full year less than the mandatory minimum in this case. PSR ¶ 93. Imposing a greater sentence would exacerbate unwarranted sentencing disparities given Mr. Peless's mitigating circumstances: That is lived over 50 years of his life without any criminal history and that this offense is an aberration in an otherwise law-abiding and honorable career and family life.

## CONCLUSION

Mr. Peless is a first-time offender who has expressed repeated and sincere remorse for his criminal actions underlying this case. A 60-month sentence, though likely greater than necessary to fulfill the sentencing purposes, is sufficient under 18 U.S.C. § 3553(a) given the mandatory minimum in this case.

Respectfully submitted,

/s/ Benton C. Martin
Attorney for Harry Peless
613 Abbott St., Suite 500
Detroit, Michigan 48226
Phone: (313) 967-5832
Email: Benton_Martin@fd.org

Dated: September 2, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

CR. NO. 25-20656

v.

HON. MARK A. GOLDSMITH

HARRY PELESS,

Defendant.
_________________________________/

## CERTIFICATE OF SERVICE

On September 2, 2026, I filed the foregoing Memorandum with using the CM/ECF filing system, which will send a copy to opposing counsel.

/s Benton C. Martin
Assistant Defender